UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOLA HASANAJ,

      Plaintiff,

                                            Case No. 4:19-cv-12693
                                            Hon. Matthew F. Leitman

v.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT ET. AL,

      Defendant.

                                                             /

## ORDER GRANTING IN PART, AND TAKING UNDER ADVISEMENT IN PART, DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 30 & 31.)

      Plaintiff Kola Hasanaj is a teacher who was formerly employed by Defendant Detroit Public Schools Community District (the "District"). The District terminated his employment in 2016 after he received three consecutive annual performance reviews of "ineffective." In this action, Hasanaj alleges that his termination was unlawful. In his First Amended Complaint, he asserts the following claims arising out of his termination: 1) deprivation of his right to procedural due process under the Fourteenth Amendment and under Article I, Section 17 of the Michigan Constitution of 1963; 2) wrongful termination; 3) violation of the Family Medical Leave Act, 29 U.S.C. 2601, et. seq. (the "FMLA"); and 4) violation of the Michigan Whistleblowers' Protection Act, Mich. Comp. Laws §§15.361, et. seq. (the "WPA"). (*See* Am. Compl., ECF No. 26, PageID.394-405.) Hasanaj brings these claims

against the District, former District Emergency Manager Stephen Rhodes, and current or former District employees Brenda Carethers, Cassandra Washington, Cindy Lang, and Lauri Washington. (The Court will refer to all Defendants other than Rhodes – who has his own counsel – collectively as the "District Defendants.")

On August 28, 2020, the District Defendants and Rhodes filed separate motions to dismiss the First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mots., ECF Nos. 30 & 31.) The Court held a hearing on the motions on January 13, 2021. During the hearing, the Court addressed Hasanaj's claims in the order they appear in the First Amended Complaint. For each claim, the Court heard argument from counsel and then announced a ruling on that claim (and the reasons for the ruling) and/or took the claim under advisement before turning to the next claim. At the end of the hearing, the Court reviewed and summarized for the record the rulings it had made on each claim.

The Court has concluded that it would be useful to offer this additional brief summary and explanation of its rulings on each of Hasanaj's claims. For *both* the reasons explained below *and* the reasons stated on the record during the January 13, 2021, hearing, Defendants' pending motions to dismiss are **GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART**.

# I

The basic facts underlying Hasanaj's claims are as follows.  Hasanaj began working as a teacher for the District in 1999. (*See* Am. Compl. at ¶1, ECF No. 26, PageID.381.)  He received positive reviews for his teaching during many of his first ten years on the job. (*See id*. at ¶25, PageID.386.)

In 2011, the Michigan Legislature amended Michigan's Revised School Code so as to require Michigan public school districts to evaluate teachers under a new system. *See Southfield Educ. Ass'n v. Bd. of Educ. of Southfield Pub. Sch.*, No. 17-11259, 2018 WL 1509190, at *2 (E.D. Mich. Mar. 27, 2018).   Another Judge on this Court has offered the following helpful explanation as to how the teacher evaluation process works under the amendments to the Revised School Code:

> The legislation require[s] school districts to adopt "a rigorous, transparent, and fair performance evaluation system" applied "at least annually," that rated teachers on the following scale: "highly effective, effective, minimally effective, and ineffective." Mich. Comp. Laws § 380.1249(1)(a), (c). These ratings are to be based on a host of weighted factors, including "student growth and assessment data" (25% for the years in question); teacher performance measured by an "evaluation tool" that factors in "evidence of student growth," a teacher's "demonstrated pedagogical skills," classroom management skills, and attendance and discipline records; classroom observation; and lesson plan review. Mich. Comp. Laws § 380.1249(2)(a)(i), (iv), (e) (citing Mich. Comp. Laws § 380.1248(1)(b)(i)-(iii)). And the ratings, which are intended to ensure retention of "effective teachers," are to be used by school districts in making "all personnel decisions" including layoffs, reductions in force, recalls, and hiring after force reductions. Mich. Comp. Laws § 380.1248(1)(b). Seniority was relegated to a distant tie-breaking factor. Mich. Comp. Laws §

3

380.1248(1)(c).

*Southfield Educ. Ass'n,* 2018 WL 1509190, at *2.  Moreover, the amendments to the Revised School Code require each district to terminate the employment of any teacher who "is rated as ineffective on 3 consecutive annual year-end evaluations." Mich. Comp. Laws Ann. § 380.1249.

Beginning with the 2011-12 school year, the District evaluated Hasanaj's performance under the new, statutorily required process. (*See* Am. Compl. at ¶28, ECF No. 26, PageID.387.)    At the conclusion of the 2011-12 school year, the District rated Hasanaj as "minimally effective." (*Id.*)  Hasanaj did not teach during the next school year (2012-13). (*See* Pl's. Opp. to Mot. to Dismiss, ECF No. 33, PageID.626.)  At the conclusion of the three following school years (2013-14, 2014-15, 2015-16), the District rated Hasanaj as "ineffective." (Am Compl. at ¶28, ECF No. 26, PageID.387.)    In September of 2016, the District terminated Hasanaj's employment based upon his three consecutive ratings of "ineffective." (*Id*. at ¶28, PageID.391-92.)

Hasanaj says that the District's evaluation process was unfair and unlawful in several respects.  For instance, he contends that the District unlawfully forced him to teach subjects that were outside of his certification, failed to fulfill its obligation to provide him with an "individualized development plan," and conducted the evaluations before he had sufficient time to adapt to the new subject areas. (*Id*. at

4

¶76, PageID.387.)  Hasanaj says that he complained about being assigned to teach outside of his certification and about poor treatment he allegedly received from a District administrator. (*See id*. at ¶¶47, 100, 109.)

Hasanaj also contends that the District unlawfully terminated his employment without following the procedures set forth in the Teacher Tenure Act. (*See id*. at ¶¶78-80, PageID.397-98, citing Mich. Comp. Laws §§38.83(1) & 38.102.)  Hasanaj acknowledges that, as a technical matter, he did not have tenure because he did not teach within "his certification area [for the] required number of days." (*Id*. at ¶26, PageID.386.)  But he insists that he was entitled to the protections in the Teacher Tenure Act because he and the District "acted with the [mutual] understanding that he was a tenured teacher." (*Id*.)  Consistent with that mutual understanding, beginning in 2014, the District stopped giving Hasanaj notices that were "only given to nontenured (probationary) teachers." (*Id*. at ¶27, PageID.387.)  And in administrative proceedings that began in 2016, the District even "stipulated that he was a tenured teacher." (*Id*. at ¶26, PageID.386-87.[1])

---

[1] The administrative proceedings referenced above occurred before the Michigan State Tenure Commission. (*See* Am. Compl. at ¶28, ECF No. 26, PageID.387-88.) Even though both parties to those proceedings agreed that Hasanaj had tenure, the Tenure Commission, sua sponte, concluded that he did not have tenure because he had not taught the required number of days within his certification. (*Id*.)

Finally, Hasanaj says that the District's wrongful ratings of ineffective harmed his reputation and prevented him from obtaining another teaching position after the District fired him. (*See id*. at ¶¶57-60, PageID.392-93.)

## II

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id*. When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**III**

The Court begins with the District Defendants' argument that all of Hasanaj's claims are barred by the applicable statutes of limitations – which, according to the District Defendants, provide for a limitations period of (at most) three years.  In the context of a motion to dismiss under Rule 12(b)(6), a district court may "only dismiss the action as time barred if it appears from the face of the complaint that the statute of limitations prevents this suit." *Garrish v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 133 F. Supp. 2d 959, 965 (E.D. Mich. 2001).   And the face of the complaint must "clearly" reflect that the claim is time-barred before dismissal at the pleadings stage is appropriate. *Jordan v. Caruso*, 2007 WL 748463 at * 6 (E.D. Mich. 2007).   As another district court in this Circuit has explained, "[d]ismissal under Fed.R.Civ.P. 12(b)(6) based on a statute-of-limitations bar is appropriate [only] when the complaint shows conclusively on its face that the action is indeed time-barred." *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012).

While the District Defendants may ultimately have some strong arguments that all of Hasanaj's claims are time-barred, the Court cannot conclude at this point that all of the claims are so barred.   It does perhaps appear that most, if not all, of the actions by most, if not all, of the District Defendants occurred more than three years prior to the filing of the Complaint.   And Hasanaj has not yet pushed back

against the District Defendants' contention that the longest possible limitations period applicable to his claims is three years.  But the Court cannot say that the face of the Amended Complaint conclusively establishes that all of the relevant acts and omissions by all of the District Defendants occurred more than three years before Hasanaj filed this action.

Moreover, there is a legal dispute as to when Hasanaj's claims accrued.  The District Defendants argue that the claims accrued when Hasanaj received his third consecutive ineffective rating because at that time the District became obligated to terminate his employment. (*See* Defs.' Mot., ECF No. 31, PageID.540.)   Hasanaj counters that his claims did not accrue until he actually received his termination notice. (Pla.'s Resp., ECF No. 33, PageID.637.)  Both sides rely primarily upon the same decision – *Garland v. Shapiro*, 579 F.Supp. 858, 860 (E.D. Mich. 1984) – in support of their accrual arguments, but that decision did not squarely address the accrual question before the Court.  Neither side has comprehensively briefed the accrual question nor directed the Court to legal authority that sheds substantial light on the question.

For all of these reasons, the Court concludes that – with two limited exceptions – the District Defendants' statute of limitations defense is best addressed on a complete factual record and a thorough round of briefing at the summary judgment stage.  As explained below in Sections IV-A and VII, the Court is able to conclude

at this stage that the following claims are time-barred: (1) the portion of Hasanaj's procedural due process claim that rests upon the alleged deprivation of his property interest in the "minimally effective" rating he received at the end of the 2011-12 school year and (2) Hasanaj's WPA claim.

## IV

The Court now turns to the merits of Hasanaj's claim that the Defendants violated his Fourteenth Amendment right to procedural due process. "To establish a procedural due process violation under 42 U.S.C. § 1983, [Hasanaj] is required to demonstrate three elements: (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause; and (3) that the state did not afford [him] adequate procedural rights before depriving [him] of its protected interest." *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010).

The District Defendants and Rhodes both argue that Hasanaj's procedural due process claim fails because Hasanaj has not identified a property or liberty interest that is protected by the Due Process Clause. Hasanaj counters that his claim rests upon the deprivation of four separate protected interests. The Court addresses each asserted interest below.

9

**A**

Hasanaj first says that Defendants deprived him of his protected property interest in the "minimally effective" rating he received at the conclusion of the 2011-12 school year. (*See* Resp., ECF No. 33, PageID.628.)   In his words, he "had a property right in his earned 2011-12 evaluation not to be replaced by an invalid evaluation that violated the teacher-evaluation law." (*Id.*)   For at least two reasons, Hasanaj may not rest his due process claim on the deprivation of his purported property interest in his "minimally effective" rating.

First, to the extent that the claim rests on the deprivation of Hasanaj's 2011-12 "minimally effective" rating, it is time-barred.  The claim is subject to a three-year statute of limitations, *see Garland,* 579 F.Supp. at 860 (explaining that a procedural due process claim under Section 1983 is subject to a three-year statute of limitations), and it is untimely because the District Defendants allegedly deprived him of his "minimally effective" rating more than three years before he filed this action.  In Hasanaj's words, the District Defendants "replaced" his 2011-12 rating with "an invalid evaluation" at the end of the 2014 school year – when they rated him as "ineffective."  Hasanaj did not file this action until 2019 – more than three years after the District Defendants "replaced" his "minimally effective" rating.  Thus, to the extent that Hasanaj's due process claim is based upon the deprivation

10

of his interest in his "minimally effective" rating, the claim is barred under the applicable three-year statute of limitations.

Second, Hasanaj has not persuaded the Court he had a property interest in his 2011-21 "minimally effective" rating that somehow circumscribed the District Defendants' right to evaluate him anew and to rate him "ineffective" in any later year.   As support for that claimed property interest, Hasanaj relies upon *Southfield Educ. Ass'n, supra. (See* Resp., ECF No. 33, PageID.628-30.)  But the question in that case was not whether a teacher has a property interest in one annual rating that somehow limits a district's ability to evaluate the teacher anew in a subsequent year. Instead, the question was whether teachers who had been rated "effective" had a property interest in having a district consider those ratings when making staff reduction decisions.   The court held that the teachers did have such a property interest. *Southfield Educ. Ass'n, 2018 WL 1509190 at **2-6.* The court concluded that the interest was created by a statutory provision that required districts to consider effectiveness evaluations in making all staffing decisions*.*  The court explained its reasoning as follows:

> The 2011 amendments to the Revised School Code place heavy—nearly exclusive—emphasis on teacher effectiveness when hiring decisions are to be made. All of the school districts' staffing decisions must be "based on retaining effective teachers." Mich. Comp. Laws § 380.1248(1)(b). And "[e]ffectiveness shall be measured by the [statutory] performance evaluation system." *Ibid.* As noted earlier, much goes into evaluating teachers and assigning ratings under this system. An effectiveness rating is something that must be earned and conferred, much the same as a

11

veteran's preference status and a rank on a promotion eligibility list. Once a teacher earns a rating, the school district ought not to deprive the teacher of its benefits by disregarding it when making staffing decisions, changing the hiring rules contrary to the Revised School Code, without prior notice and an opportunity to be heard. The effectiveness rating, once earned, is a property interest entitled to protection under the Due Process Clause.

*Id*. at * 5.  As this passage makes clear, *Southfield Educ. Ass'n* simply does not speak to whether an effectiveness rating earned in one evaluation year imposes any limits on a school district's evaluation to conduct a fresh evaluation of a teacher in a subsequent evaluation year.  The decision thus does not support Hasanaj's claimed property interest in his 2011-12 "minimally effective" rating.

## B

Hasanaj next claims that Defendants deprived him of his protected liberty in his reputation by giving him "ineffective" ratings.  Where a nontenured public employee like Hasanaj brings such a claim for deprivation of his interest in his reputation, he must plead and prove, among other things, that the employer accused him of more than "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997).  Indeed, "[a] moral stigma such as immorality or dishonesty is required to show a deprivation of liberty." *Id.*

12

Hasanaj does not allege that any of the Defendants accused him of anything more than poor performance.  Accordingly, his claim for deprivation of his liberty interest in his reputation fails as a matter of law. ⸢

## C

Hasanaj next argues that the Defendants deprived him of his property interest in continued employment as recognized in *Perry v. Sindermann*, 408 U.S. 593 (1972) and *Toussaint v. Blue Cross*, 292 N.W.2d 880 (Mich. 1980).  At the conclusion of hearing, the Court ordered supplemental briefing on this aspect of Hasanaj's due process claim.  The Court takes this aspect of Hasanaj's due process claim under advisement.

## D

Hasanaj finally argues that Defendants deprived him of his protected property interest in having the Defendants follow and fairly apply the teacher evaluation criteria set forth in the Revised School Code.  Following the hearing, the Court entered an order requiring supplemental briefing on this component of Hasanaj's due process claim. (*See* Order, ECF No. 39.)  The Court takes this aspect of Hasanaj's due process claim under advisement.

**V**

The Court next turns to Hasanaj's wrongful termination claim. Hasanaj advances two theories of wrongful termination. The Court will address them separately.

**A**

Hasanaj first argues that his termination was wrongful because (1) he had a legitimate expectation of continued employment as a just cause employee under *Toussaint, supra*, and (2) there was no just cause for his termination. The Court directed the parties to file supplemental briefs on this theory at the conclusion of the hearing. The Court takes this aspect of Hasanaj's wrongful termination claim under advisement.

**B**

Hasanaj next argues that his discharge is actionable because it violated public policy. As Hasanaj acknowledges, in order to prevail on this claim, he must plead and prove that he was discharged (1) "in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty," (2) "for the failure or refusal to violate the law in the course of employment," or (3) "for exercising a right conferred by a well-established legislative enactment." (Resp., ECF No. 33, Page ID.639, quoting *Edelberg v. Leco Corp.,* 599 N.W.2d 785 (Mich Ct. App. 1999).

14

During the hearing, counsel for Hasanaj clarified that he is not claiming that he was discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty.

Next, the Court concludes that Hasanaj has failed to state a viable claim that he was discharged for his failure or refusal to violate the law in the course of his employment. Indeed, he has not alleged that he failed or refused to violate the law. He says that the District Defendants unlawfully assigned him to teach outside of his certification area, and he suggests that he may have complained about those assignments. But he never alleges that he declined to teach a subject outside of his certification or that he disobeyed any directive from the District Defendants to act unlawfully. Simply put, he has not identified a single unlawful action that he failed or refused to take. Thus, he may not proceed with his wrongful discharge claim to the extent that it rests on the theory that he was fired for failing or refusing to violate the law.

The Court has ordered supplemental briefing on whether Hasanaj has stated a viable claim on the theory that he was fired for exercising a right conferred by a well-established legislative enactment. The Court takes that component of Hasanaj's wrongful discharge claim under advisement.

## VI

Next up is Hasanaj's claim that the Defendants terminated his employment in retaliation for his exercise of rights under the FMLA.  Hasanaj does not have any direct evidence to support this claim, so the Court evaluates it under the familiar McDonnell-Douglas burden shifting framework. *Edgar v JAC Products, Inc*., 443 F.3d 501, 508 (6th Cir. 2008).  Hasanaj "can make out a prima facie case" of FMLA retaliation "by showing that (1) [he] availed [himself] of a protected right under the FMLA … (2) [he] suffered an adverse employment action, and (3) that there was a causal connection between the exercise of [his] rights under the FMLA and the adverse employment action." *Id*.  Hasanaj's "burden in establishing a prima facie case is not intended to be an onerous one."  *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007).

Hasanaj has failed to make a prima facie showing of causation.  During the hearing, the Court asked him to identify his causation allegations, and he directed the Court to his contention that Defendant Carethers included the following statement in his evaluation for the 2013-14 school year: "The teacher took a FMLA and has never returned even though he was scheduled to return to work." (Am. Compl. at ¶38, PageID.389.)  But this statement does not evidence any anti-FMLA animus.  Carethers is not complaining that Hasanaj took FMLA leave.  She is complaining that he did not return from the leave once the leave was completed and

16

he was due back at work.  Moreover, Hasanaj was not fired until two years after he took the FMLA leave and two years after Carethers made this statement.  The lengthy period between the leave and Carethers' statement, on one hand, and the adverse action, on the other hand, sharply undercuts any inference that Hasanaj was terminated for taking FMLA leave in 2013-14.  Simply put, Hasanaj's single allegation that Carethers made a statement in 2014 that happened to mention FMLA leave is not enough to support an inference at the prima facie stage that his 2016 firing was caused by (or was in retaliation for) his 2014 FMLA leave.[2]  His FMLA retaliation claim thus fails as a matter of law. !

## VII

The Court finally turns to Hasanaj's WPA claim.  At the hearing, Hasanaj properly conceded that the claim is barred by the WPA's 90-day statute of limitations because Hasanaj filed this action well over 90 days after his firing. *See* Mich. Comp. Laws § 15.363(1).   Accordingly, the Court will dismiss Hasanaj's WPA claim.

## VIII

For the reasons explained above, Defendants' Motions to Dismiss are **GRANTED IN PART** as follows:

---

[2] Hasanaj took a second FMLA leave in January of 2016. (*See* First Am. Compl. at ¶48, ECF No. 26, PageID.391.)  But he has neither alleged nor argued that the Defendants retaliated against him for taking that leave.

1. The following claims and/or components of Hasanaj's claims are

   **DISMISSED**:

   a. His procedural due process claim to the extent that it rests upon the alleged deprivation of his property interest in his 2011-12 "minimally effective" rating and the alleged deprivation of his liberty interest in his reputation.

   b. His wrongful termination in violation of public policy claim to the extent it rests upon his allegation that he was fired (a) in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty or (b) for the failure or refusal to violate the law in the course of employment.

   c. His claim for retaliation in violation of the FMLA.

   d. His claim under the WPA.

2. As indicated on the record at the close of the hearing and in this Court's order dated January 20, 2021 (ECF No. 39), the parties shall submit supplemental briefing on the following:

   a. Hasanaj's procedural due process claim to the extent that it rests upon (1) the alleged deprivation of his property right to continued employment under *Perry* and *Toussaint* and (2) the alleged

18

deprivation of his property right to be fairly evaluated in accordance with the standards and practices set forth in the Revised School Code.

b. Hasanaj's procedural due process claim to the extent that it rests on the Michigan Constitution.

c. Hasanaj's termination in violation of public policy claim to the extent that it rests upon Hasanaj's allegation that he was fired for exercising a right conferred by a well-established legislative enactment

d. Hasanaj's wrongful termination claim to the extent that it rests upon *Toussaint*.

3. The parties shall submit their supplemental briefs by February 24, 2021. Each party may respond to the other side's supplemental briefing by March 17, 2021.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 20, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 20, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764
