UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOLA HASANAJ,

      Plaintiff,                           Case No. 19-cv-12693

v.                                    Hon. Matthew F. Leitman

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT *et al.*,

      Defendants.

_____/

## ORDER GRANTING REMAINING COMPONENTS OF DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 30, 31)

Plaintiff Kola Hasanaj is a teacher who was formerly employed by Defendant Detroit Public Schools Community District (the "District"). In three school years – 2013-14, 2014-15, and 2015-16 – the District evaluated his performance under Section 1249 of the Michigan Revised School Code, Mich. Comp. Laws § 380.1249 ("Section 1249"). As relevant here, Section 1249 requires districts to evaluate teacher performance on an annual basis and to terminate the employment of any teacher who receives three consecutive ratings of "ineffective." Mich. Comp. Laws § 380.1249(2)(j). Hasanaj received "ineffective" ratings for the school years listed above, and the District therefore terminated his employment in May of 2016. Hasanaj insists that the performance evaluations that led to his termination were

1

invalid because the District failed to fairly and impartially apply the teacher performance criteria set forth in Section 1249.

In this action, Hasanaj alleges that his termination based upon the improper evaluations was unlawful.  In his First Amended Complaint, he asserts the following claims arising out of his termination: (1) deprivation of his right to procedural due process under the Fourteenth Amendment and under Article I, Section 17 of the Michigan Constitution of 1963; (2) wrongful termination; (3) violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. (the "FMLA"); and (4) violation of the Michigan Whistleblowers' Protection Act, Mich. Comp. Laws § 15.36 *et seq*. (the "WPA"). (*See* First Am. Compl., ECF No. 26, PageID.394-405.)  Hasanaj brings these claims against the District, former District Emergency Manager Stephen Rhodes, and current or former District employees Brenda Carethers, Cassandra Washington, Cindy Lang, and Lauri Washington.  (The Court will refer to all Defendants other than Rhodes – who has his own counsel – collectively as the "District Defendants.")

On August 28, 2020, the District Defendants and Rhodes filed separate motions to dismiss the First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mots., ECF Nos. 30, 31.)  The Court held a hearing on the motions on January 13, 2021.  Following the hearing, the Court entered an order (1) dismissing certain aspects of Hasanaj's due process claim and taking

2

certain aspects of that claim under advisement; (2) dismissing certain aspects of Hasanj's wrongful termination claim and taking certain aspects of that claim under advisement; (3) dismissing Hasanaj's FMLA claim; and (4) dismissing Hasanaj's WPA claim. (*See* Order, ECF No. 40.)  The Court also ordered supplemental briefing on the aspects of Hasanaj's claims that it took under advisement. (*See id.*; *see also* Order, ECF No. 39.)  The parties have now filed their supplemental briefs, and the Court is prepared to rule.  For the reasons explained below, the Court **GRANTS** the portions of Defendants' Motions to Dismiss that it took under advisement and **DISMISSES** Hasanaj's remaining claims.

## I

The factual background of this action and the governing legal standard are set forth in the Court's earlier order. (*See* Order, ECF No. 40.)  The Court incorporates those elements of its earlier order into this order and will not repeat them here.

## II

The Court begins with the components of Hasanaj's federal due process claim that it took under advisement.  As the Court noted in its earlier order, to prevail on a procedural due process claim under 42 U.S.C. § 1983, a plaintiff "is required to demonstrate three elements: (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause;

3

and (3) that the state did not afford [him] adequate procedural rights before depriving [him] of its protected interest." *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010).  In Hasanaj's First Amended Complaint, he alleges that the Defendants deprived him of a number of liberty and/or property interests that he says were protected by the Due Process Clause.  In the Court's earlier ruling, it dismissed Hasanaj's due process claim to the extent that it rested upon the deprivation of all but two of the interests that Hasanaj identified.  The issue that remains before the Court is whether the last two alleged interests identified by Hasanaj are protected by the Due Process Clause.  The Court concludes that they are not.

## A

The first remaining interest identified by Hasanaj is his alleged property interest in continued employment under *Perry v. Sindermann*, 408 U.S. 593 (1972). In *Perry*, the Supreme Court ruled that a non-tenured public employee may have a property interest in continued employment based upon "the existence of rules and understandings, promulgated and fostered by state officials, that may justify [an employee's] legitimate claim of entitlement to continued employment absent sufficient cause." *Id.* at 602.  Applying that rule, the Supreme Court held that a non-tenured community college professor could have a protected property interest in continued employment where the community college had issued a statement indicating that its professors could "feel that [they had] permanent tenure as long as

4

[their] teaching services are satisfactory and so long as [they] display a cooperative attitude toward his co-workers and superiors, and as long as he is happy in his work." *Id.* at 600.

Here, Hasanaj (a non-tenured teacher) claims that he had a protected property interest in continued employment under *Perry* because the District Defendants' actions supported his legitimate expectation that he enjoyed tenure protection. Hasanaj alleges that the District Defendants "acted" as if he had tenure and stipulated (in state administrative proceedings) that he had tenure even though he did not actually qualify for tenure under Michigan's Teacher Tenure Act. (First Am. Compl. at ¶¶ 6, 26, 67, ECF No. 26, PageID.383, 388-389, 394.)

The Sixth Circuit's decision in *Ryan v. Aurora City Board of Education*, 540 F.2d 222 (6th Cir. 1976), forecloses Hasanaj's claim that he had a protected property interest in continued employment under *Perry*.  In *Ryan*, four non-tenured public school teachers in Ohio alleged that their terminations from employment violated the Due Process Clause.  The teachers contended that they had a protected property interest in continued employment under *Perry* because a provision of the school district's 1965 Policy Manual gave rise to a legitimate expectation of continued employment.  That provision suggested that the teachers would receive performance evaluations and would have an opportunity to remedy any deficiencies in

5

performance before being terminated from employment.[1]  The Sixth Circuit rejected

the teachers' argument that this provision gave rise to a protected property interest

_____

[1] The Sixth Circuit quoted the provision from the 1965 Policy Manual as follows:

2. Chapter II. Instructional Personnel.

A. Administrative Organization

2. Principals

(b) General Duties

(c) Specific Duties

(11) Hold at least one conference and one classroom visit each year with teacher personnel, in regard to their individual growth contribution to the educational program and making such suggestions for continuous improvement as necessary and reporting such conferences in writing to the conferees. If a person's work is unsatisfactory, specific suggestions for improvement shall be made in the conference report. Subsequent written reports shall confirm progress made and provide a basis for reappointment. The superintendent shall receive "The Teacher Evaluation Sheet" from the evaluation report for each teacher with the principal's recommendation for reappointment or dismissal by March 1 of each year. Any teacher recommended for dismissal must have been clearly informed of his status by the superintendent and completely aware that such a recommendation is being made with definite reasons for same.

Chapter III. Duties and Responsibilities of Instructional Staff.

4. Contracts

(e) Teachers who are not to be reappointed shall be given the reasons and notified in writing by the clerk-treasurer of the school district as confirmed by the board of education on or before April 30. Such written notice to the teacher on non-re-employment shall not be necessary

under *Perry*.  The court held that a teacher cannot have a legitimate expectation of continued employment based upon the policies and practices of a school district where there is a state tenure statute that clearly establishes the terms under which teachers obtain and retain tenure:

> A non-tenured teacher may acquire an "expectancy" of continued employment where "the policies and practices of the institution" rise to the level of implied tenure. See, *Sindermann*, 408 U.S. at 603, 92 S.Ct. 2694; *Patrone v. Howland Board of Education*, 472 F.2d 159, 160 (6th Cir. 1972); *Lukac v. Acocks*, 466 F.2d 577, 578 (6th Cir. 1972). *We hold, however, that a non-tenured teacher has no "expectancy" of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system. See Patrone*, 472 F.2d at 160-61; *Lukac*, 466 F.2d at 578; *Orr*, 444 F.2d 132-33. *See also Blair v. Board of Regents*, 496 F.2d 322 (6th Cir. 1974). Since property interests are created by state law and not the Constitution, *Roth* at 577, 92 S.Ct. 2701, the fact that the State limits the guarantee to only tenured teachers, necessarily negatives any property interest.
>
> This conclusion is supported by the Supreme Court's decision in *Sindermann*. There the Court stated the effects of a state law tenure system upon a claim of entitlement to implied job tenure:
>
>> We do not now hold that the respondent has any such legitimate claim of entitlement to job tenure. For "(p)roperty interests . . . are not created by the

_____

provided that the teacher, after having consulted with the superintendent of the schools, shall give to the board of education before April 30 a letter asking that he not be reappointed. All teachers not so notified shall be considered reappointed.

*Ryan,* 540 F.2d at 225.

> Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source <u>such as state law</u> . . . ." *Board of Regents v. Roth, supra*, 408 U.S., at 577 (92 S.Ct. 2701, at 2709). <u>If it is the law of Texas that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated.</u> 408 U.S. at 602 n. 7, 92 S.Ct. at 2700. (Emphasis added.)
>
> *The fact that Ohio already has an explicit tenure policy obviates the need, which existed in Sindermann, to supply one by implication.*

*Ryan,* 540 F.2d at 227-28 (italic emphasis added; underline emphasis in original; internal footnote omitted).

*Ryan* makes clear that Hasanaj could not have had a legitimate expectation of continued employment as a tenured teacher based upon the policies and practices of the District Defendants because Michigan has a comprehensive Teacher Tenure Act, *see* Mich. Comp. Laws § 38.91 *et seq.*, that sets forth the requirements for tenure. Accordingly, Hasanaj's procedural due process claim fails as a matter of law to the extent that it rests upon his contention that under *Perry* he had a continued interest in employment based upon the policies and practices of the District Defendants.

Hasanaj counters that *Ryan* "stands [only] for the proposition that probationary teachers do not have an expectation of continued employment when they are notified pursuant to statute that their one-year contract was not renewed." (Hasanaj Supp. Br., ECF No. 45, PageID.966.)  The Court respectfully disagrees

with that reading of *Ryan*.  As the excerpt from *Ryan* quoted above illustrates, the court's holding was much broader: "*We hold, however, that a non-tenured teacher has no 'expectancy' of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system*." *Ryan*, 540 F.2d at 227 (emphasis added).

Hasanaj further contends that another published Sixth Circuit decision – *Soni v. Board of Trustees of the University of Tennessee*, 513 F.2d 347 (6th Cir. 1975) – establishes that that "the existence of a tenure law is *relevant, but not decisive*, to determining whether an employee has an expectation of continued employment." (Hasanaj Supp. Br., ECF No. 45, PageID.960, citing *Soni;* emphasis in original.)  In *Soni*, the Sixth Circuit held that a university professor could have a protected property interest in continued employment where the university's conduct supported the professor's legitimate expectation that he had a "degree of permanence" in the university community. *Soni*, 513 F.2d at 350.  But in *Ryan*, the Sixth Circuit held that *Soni* does not apply to public school K-12 teachers who teach in a state with a teacher tenure statute (*i.e.*, a teacher like Hasanaj): "Appellants [the public school teachers] rely upon the opinion of this court in *Soni v. Board of Trustees of the University of Tennessee*, 513 F.2d 347 (6th Cir. 1975).  *Soni* has no application in the present case; it involved a factual situation distinctly different from the facts of

the case at bar." *Ryan*, 540 F.2d at 228.   Thus, *Soni* does not support Hasanaj's claimed property interest here.

For all of these reasons, the Court **DISMISSES** Hasanaj's procedural due process claim to the extent that that claim rests upon his claimed property interest in continued employment under the *Perry* legitimate-expectations theory.

**B**

The second remaining protected interest identified by Hasanaj is his claimed property interest in having the District Defendants fairly and impartially apply the teacher evaluation criteria in Section 1249.  *Ryan* also forecloses Hasanaj's reliance on this purported interest.

*Ryan* made clear that compliance with standards set forth in teacher tenure and evaluation laws is a matter of state law, not a matter to be policed by the federal courts under the Due Process Clause.  The court quoted with approval its earlier holding that "[r]eview of actions of school authorities under the Teachers' Tenure Law of Michigan is the prerogative of the courts of that State and not of the federal judiciary." *Ryan*, 540 F.2d at 226-27 (quoting *Manchester v. Lewis*, 507 F.2d 289, 291 (6th Cir. 1974)).  The court added that a school district's "statement of reasons [for discharging a teacher] and their adequacy or accuracy are matters of state law, not federal constitutional law." *Id.* at 229.  Given these passages from *Ryan*, the Court concludes that the District Defendants' alleged failure to properly apply the

10

teacher evaluation procedures in Section 1249 does not give rise to a due process claim. *See also Jones v. Union County, TN*, 296 F.3d 417, 429 (6th Cir. 2002) (explaining that the failure to follow a state statute does not support a claim under the Due Process Clause).

Hasanaj counters that he does have a viable due process claim because he alleges that the District Defendants "exclude[d] [him] from teaching with an evaluation that has no rational connection to the [Section 1249's] purpose." (Hasanaj Supp. Br., ECF No. 42, PageID.875.) In support of this argument, Hasanaj relies on the Supreme Court's decision in *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39 (1957). According to Hasanaj, the "central holding of *Schware*" is that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process Clause…." (*Id*., quoting *Schware*, 353 U.S. at 238-39.) But the Supreme Court describes the holding of *Schware* more narrowly: "*Schware* held that former membership in the Communist Party and an arrest record relating to union activities could not be the basis for completely excluding a person from the practice of law." *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). In any event, *Schware* does not save Hasanaj's due process claim because his teacher evaluations did not formally "exclude" him from the teaching profession. As a practical matter, the evaluations may have persuaded many potential employers not to hire him (*see, e.g.*, First Am. Compl. at ¶ 61, ECF No. 26,

11

PageID.393), but he does not allege that the evaluations were a complete legal bar to his continuing to teach in public schools.  Moreover, he does not cite any persuasive authority for the proposition that a plaintiff has a viable due process claim against a public employer on the ground that the employer's flawed performance evaluations persuaded other potential employers not to hire him.

Finally, Hasanaj contends that if the Court does not allow him to pursue his due process claim, he will be left with "no remedy," and "school administrators in Michigan [would be] free to flout educational standards and the rights of teachers and children with impunity." (Hasanaj Supp. Br., ECF No. 42, PageID.863.) Hasanaj's concern about the lack of a remedy for the misconduct he alleges is fair and reasonable.  Indeed, if school districts and administrators conducted the sort of arbitrary and unfair teacher performance evaluations that Hasanaj alleges here, that would potentially undermine the reliability of the evaluation process that the Michigan Legislature implemented through Section 1249.  And the quality of education provided to Michigan students could potentially suffer as a result. But concerns about the lack of a remedy for teacher evaluations that do not comply with Section 1249 are properly addressed to the Michigan Legislature – the body with the authority to create a remedy for the failure to comply with the evaluation standards that it created in Section 1249.

For all of these reasons, the Court **DISMISSES** Hasanaj's due process claim to the extent that it rests upon his alleged property interest in having the District Defendants fairly and impartially apply the evaluation criteria in Section 1249. Since that is the last remaining component of Hasanaj's federal due process claim, that claim has now been dismissed in its entirety.

### III

The Court now turns to Hasanaj's claim that his termination violated his right to due process of law under Article I, Section 17 of the Michigan Constitution of 1963. This claim fails as a matter of law for the same reasons that Hasanaj's due process claim under the Fourteenth Amendment fails. That is because "due process claim[s] under the Michigan constitution … are subject to the same analysis as due process claims under the federal constitution." *Gradisher v. County of Muskegon*, 255 F.Supp.2d 720, 731 n.8 (W.D. Mich. 2003) (citing *In Re CR*, 646 N.W.2d 506, 516 (Mich. App. 2002)). *See also JGA Development, LLC v. Charter Twp. of Fenton*, 2006 WL 618881, at *8 (E.D. Mich. 2006) (same).

### IV

The Court next addresses Hasanaj's wrongful termination claim based upon the decision of the Michigan Supreme Court in *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880 (Mich. 1980). The Court concludes that this claim is not viable.

13

The Michigan Supreme Court held in *Toussaint* that a "just cause" limitation on an employer's right to terminate an employee may be implied based upon the "employee's legitimate expectations grounded in [the] employer's policy statements." *Id.* at 885. As support for that holding, the court drew upon (and quoted extensively from) the United States Supreme Court's decision in *Perry*, *supra*. *See id.* (quoting *Perry*).

Given the *Toussaint* court's "reliance upon *Perry*," it follows that where an employee's expectations are not sufficient to create a property interest under *Perry*, they are likewise not sufficient to create a just cause limitation on termination under *Toussaint*. *Thorin v. Bloomfield Hills Bd. of Educ.*, 513 N.W.2d 230, 235 (Mich. App. 1994) (looking to *Perry* in determining the proper application of the holding in *Toussaint*). For the reasons explained above, Hasanaj's subjective expectation of continued employment was insufficient to create a property interest under *Perry*. For the same reasons, Hasanaj's expectation was insufficient to imply a just cause termination provision in his employment contract under *Toussaint*. Stated another way, because Michigan has a comprehensive statutory teacher tenure system that governs when a teacher obtains and retains the right to continued employment, Hasanaj could not have had a legitimate and/or reasonable expectation of continued employment based on the District Defendants' policies, practices, and procedures.

14

S*ee Ryan*, *supra*.   For all of these reasons, the Court **DISMISSES** Hasanaj's wrongful termination claim based upon *Toussaint*.

## V

The Court next takes up Hasanaj's claim that he was discharged in violation of Michigan public policy.  All that remains of this claim is Hasanaj's allegation that he was fired for exercising a right conferred by a well-established legislative enactment. (*See* Order, ECF No. 40, PageID.806-807 – dismissing other components of Hasanaj's public policy claim).  The Court now dismisses this remaining aspect of Hasananjs' public policy claim.

In *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 712 (Mich. 1982), the Michigan Supreme Court held that an employee may bring a claim for wrongful discharge in violation of public policy where his employer fires him for his "exercise of a right conferred by a well-established legislative enactment."  As examples of such a claim, the court pointed to cases in which employees were fired for exercising their statutory right to file claims for workers compensation benefits. *See id.*

Hasanaj has no such claim here because he has not alleged that his exercise of any statutory right led to his discharge.  Indeed, he has not identified any statutory right that he "exercised."  Instead, he alleges that he enjoyed certain rights under the Section 1249 – such as the right to be given the opportunity to improve performance

that the District deemed insufficient and the right to performance coaching (*see* Hasanaj Supp. Br., ECF No. 42, PageID.885) – and that the District Defendants violated those rights.  But the District Defendants' alleged failure to honor Hasanaj's rights is not the same as the District terminating Hasanaj for his *exercise* of a statutory right conferred upon him.

Hasanaj counters that the Michigan Court of Appeals' decision in *Landin v. Healthsource Saginaw, Inc.,* 854 N.W.2d 152 (Mich. App. 2014), demonstrates that he has stated a viable claim that he was discharged for exercising a right conferred by statute.  It does not.  *Landin* is distinguishable.  The plaintiff in *Landin*, a nurse, alleged that he was terminated for reporting alleged negligence that led to the death of a patient.  The Michigan Court of Appeals held that he stated a viable claim that he was discharged for exercising a right conferred by statute. *See id.* at 162-63.  In support of that holding, the court explained that the plaintiff's act of reporting fell within Mich. Comp. Laws § 333.20176a(1)(a). *See id.*  That statute provides in relevant part that a "health care facility or agency shall not discharge or discipline" an employee who "in good faith reports … the malpractice of a health professional." Mich. Comp. Laws § 333.20176a(1)(a).  The plaintiff's claim in *Landin* was therefore viable because Mich. Comp. Laws § 333.20176a(1)(a) effectively conferred upon employees of health care facilities a right to report malpractice, and the plaintiff was fired for exercising that right.  Here, in sharp contrast, Hasanaj has

16

not identified a statutory provision like Mich. Comp. Laws § 333.20176a(1)(a), nor has he alleged that he was fired for taking any affirmative action specifically authorized by a statute.   Thus, *Landin* does not support Hasanaj's public policy claim.

In Hasanaj's supplemental brief, he offers one last argument in support of his claim that his termination violated public policy.   He contends the District terminated his employment "via … Section 1249" even though that statutory provision "does not apply" to him. (Hasanaj Supp. Br., ECF No. 42, PageID.883-87.)  Hasanaj may not proceed on this theory.   It is not pleaded in his First Amended Complaint.   More importantly, it directly conflicts with the allegations in the First Amended Complaint.   In that pleading, Hasanaj quotes at length from Section 1249 and then claims that the District Defendants' treatment of him violated that statute. For instance, he highlights that Section 1249 requires a "rigorous, transparent, and fair performance evaluation system" (First Am. Compl. at ¶71, ECF No. 26, PageID.395, quoting Mich. Comp. Laws § 380.1249(1); emphasis removed), and he then complains that he "did not have a 'rigorous, transparent, and fair' evaluation system." (*Id.* at ¶76, PageID.397.)  Likewise, in an earlier brief, Hasanaj insisted that the District Defendants violated the requirement in Section 1249 that he be given "ample opportunities to improve" performance issues identified during evaluations. (Hasanaj  Resp.,  ECF  No.  33,  PageID.643,  quoting  Mich.  Comp.  Laws  §

17

380.1249(1)(d)(iv).)  Hasanaj may not salvage his public policy claim by recasting it in a supplemental brief in a manner that conflicts with the allegations in his First Amended Complaint.

## VI

The Court next addresses Hasanaj's argument that the Court erred when it dismissed his FMLA retaliation claim in its prior order.  The Court agrees that it erred and that its analysis was flawed.  But the Court concludes that once its errors are corrected, Hasanaj's FMLA retaliation claim still fails as a matter of law.

The Court gave the following explanation for dismissing Hasanaj's FMLA claim:

> Hasanaj does not have any direct evidence to support this claim, so the Court evaluates it under the familiar *McDonnell-Douglas* burden shifting framework. *Edgar v JAC Products, Inc*., 443 F.3d 501, 508 (6th Cir. 2008). Hasanaj "can make out a prima facie case" of FMLA retaliation "by showing that (1) [he] availed [himself] of a protected right under the FMLA … (2) [he] suffered an adverse employment action, and (3) that there was a causal connection between the exercise of [his] rights under the FMLA and the adverse employment action." *Id*. Hasanaj's "burden in establishing a prima facie case is not intended to be an onerous one." *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007).
>
> Hasanaj has failed to make a *prima facie* showing of causation. During the hearing, the Court asked him to identify his causation allegations, and he directed the Court to his contention that Defendant Carethers included the following statement in his evaluation for the 2013-14 school year: "The teacher took a FMLA and has never

18

returned even though he was scheduled to return to work."
(Am. Compl. at ¶38, PageID.389.) But this statement does
not evidence any anti-FMLA animus. Carethers is not
complaining that Hasanaj took FMLA leave. She is
complaining that he did not return from the leave once the
leave was completed and he was due back at work.
Moreover, Hasanaj was not fired until two years after he
took the FMLA leave and two years after Carethers made
this statement. The lengthy period between the leave and
Carethers' statement, on one hand, and the adverse action,
on the other hand, sharply undercuts any inference that
Hasanaj was terminated for taking FMLA leave in 2013-
14. Simply put, Hasanaj's single allegation that Carethers
made a statement in 2014 that happened to mention FMLA
leave is not enough to support an inference at the prima
facie stage that his 2016 firing was caused by (or was in
retaliation for) his 2014 FMLA leave.   His FMLA
retaliation claim thus fails as a matter of law.

(Order, ECF No. 40, PageID. 808-809.)

There are two errors in this analysis: one legal and one factual.  The legal error

was the Court's reliance on the *McDonnell-Douglas* framework.  The Court should

not have applied that framework because "the *prima facie* case under *McDonnell*

*Douglas* is an evidentiary standard, not a pleading requirement." *Keys v. Humana,*

*Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).  Instead of applying the *McDonnell-Douglas*

framework, the Court should have asked whether Hasanaj pleaded sufficient facts to

make plausible his claim that the District fired him as retaliation for his exercise of

his rights under the FMLA. *See id.*  The factual error was the Court's statement that

Carethers made her statement about Hasanaj's FMLA leave after that leave had

terminated.  The Court should have recognized that Hasanaj alleged that he was on

a then-active FMLA leave when Carethers made the statement. (*See* Am. Compl. ECF No. 26, PageID.389.)  The Court regrets making these errors, but Hasanaj's FMLA claim cannot survive even when those errors are corrected.

Hasanaj has failed to plausibly allege that he was fired for exercising his rights under the FMLA.  As noted above, during the hearing on the motions to dismiss, Hasanaj identified only a single factual allegation in the Amended Complaint that linked his firing to his exercise of FMLA rights: Carethers' statement in May of 2014 that during the 2013-2014 school year, Hasanaj failed to return from FMLA leave. But the District did not fire Hasanaj after Carethers made that statement.  On the contrary, *the District brought him back to teach during both the 2014-15 and 2015-2016 school years.* (*See* Am. Compl. at ¶¶ 41-42, ECF No. 26, PageID.390.)  Indeed, the District did not fire Hasanaj until September 2016 – more than two years after Carethers made her statement about Hasanaj's FMLA leave.  Moreover, Hasanaj alleges that he took two additional FMLA leaves – during portions of the 2013-2014 and 2015-2016 school years (*see id.* at ¶¶ 32, 48, PageID.388, 391) – and he does not allege that the District took any action against him based upon those leaves. Under all of these circumstances, it is not plausible that the District terminated Hasanaj's employment in 2016 in retaliation for his 2014 FMLA leave.

Finally, for several reasons, the Court denies Hasanaj's request – presented in a single sentence in his post-hearing supplemental brief (*see* Supp. Br., ECF No. 42,

PageID.882) – to amend his FMLA retaliation claim.  First, requesting leave to amend in a supplemental brief is not the proper way to seek leave to amend. *See La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("A request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend.") Because Hasanaj has not filed a motion for leave to amend, he is "entitled to a review of the complaint as filed pursuant to Rule 12(b)(6)," but he is *"*not entitled to an advisory opinion from the Court informing [him] of the deficiencies of [his FMLA retaliation claim] and then an opportunity to cure those deficiencies." *Id.* (quoting *Begala v. PNC Bank Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)).  Second, the Court already gave Hasanaj an opportunity to amend his Complaint and highlighted for Hasanaj the need to allege all material facts known to him in support of his claims. (*See* Order, ECF No. 21, PageID.368.)   Finally, Hasanaj has not identified any additional factual allegations that he could plead in support of his FMLA retaliation claim.  For all of these reasons, the Court concludes that even though Rule 15 embodies a liberal policy in favor of permitting amendments, *see, e.g.*, *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 552 (6th Cir. 2008), leave to amend the FMLA retaliation claim (and all of the other claims as well) is properly denied.

## VII

Accordingly, for the reasons explained above, **IT IS HEREBY ORDERED**

that the portions of Defendants' Motions to Dismiss (ECF Nos. 30, 31) that it took

under advisement are **GRANTED,** and all of Hasanaj's remaining claims are

**DISMISSED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 14, 2021

    I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 14, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764
